IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RALPH DALE ARMSTRONG,

                    Plaintiff,

        v.

STATE OF WISCONSIN,

                   Defendant.

OPINION AND ORDER

12-cv-426-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Ralph Dale Armstrong served more than twenty-four years in prison for rape and murder before his conviction was overturned by the Wisconsin Supreme Court on the basis of new DNA evidence.  Four years after his cases was remanded for a new trial, the circuit court dismissed the case for prosecutorial misconduct.  Acting pro se, plaintiff has filed a proposed civil action for monetary relief, alleging that he was denied due process when he was wrongfully convicted.  He alleges that he would never have been convicted had it not been for the witness and evidence tampering by various police officers, crime lab analysts and prosecutors.  Plaintiff has paid his filing fee in full.

Plaintiff is a prisoner at the Guadalupe County Correctional Facility in Santa Rosa, New Mexico.  Because plaintiff is prisoner, the Prison Litigation Reform Act requires the court to screen plaintiff's complaint and dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks money damages from a defendant

1

who is immune from such relief.   28 U.S.C. § 1915A.

After reviewing the complaint, I conclude that plaintiff's complaint must be dismissed for failure to satisfy the pleading standards of Federal Rule of Civil Procedure 8, because plaintiff has not identified the individual defendants whom he intends to sue.

Plaintiff has filed various additional motions.  He filed a "motion for free process," dkt. #4, which appears to be a form document that litigants use in New Mexico state courts to request permission to proceed without paying fees for filing or service of process.  This motion will be denied as unnecessary in light of the court's order finding that plaintiff's may proceed in forma pauperis.  Dkt. #8.  Plaintiff also filed a motion for extension of time, dkt. #6, in which he requests an extension for his deadline to amend the complaint after he is allowed to proceed and the court rules on his motion for appointment of counsel.  As this motion is premature, the court will deny it without prejudice.

In his proposed complaint, plaintiff alleges the following facts.


ALLEGATIONS OF FACT

On March 24, 1981, plaintiff Ralph Armstrong was convicted of first degree sexual assault and first degree murder.  Wis. Stat. §§ 940.225(1)(a) and 940.01 (1979).  He was incarcerated for more than twenty-nine years.  In 2005, the Wisconsin Supreme Court vacated his conviction on the basis of newly obtained DNA evidence and remanded his case for a new trial.  State v. Armstrong, 2005 WI 119, 700 N.W.2d 98 (2005).  On remand, in an order entered on August 26, 2009, the circuit court dismissed the case for prosecutorial

misconduct.  State v. Armstrong, Dane County Case No. 1980CF495.


A. Police and Prosecutorial Misconduct Before and During Original Trial

On June 24, 1980, Charise Kamps was discovered murdered in Madison, Wisconsin. Police removed dozens of drug items and related paraphernalia from the crime scene. Although witness statements suggested that this evidence might indicate a motive for the attack or the victim's last known movements and contacts, officers threw the items together in a trash bag, took them to the police department, incinerated them and documented the incineration with a signed official request.  Although another signed report indicated that the trash bag items had only been moved, the evidence was never found.

Officers also canvassed the victim's neighborhood and found a witness who claimed to see a male entering the victim's building several times on the night of the murder.  The witness described the man as 5' 5" to 5' 6" tall, weighing about 165 pounds, shirtless, with no tattoos, and a mustache.  Plaintiff was 6' 2" tall, weighed around 200 pounds and had no mustache and did have noticeable dark tattoos on both arms.

Before any attempt at identification, police and prosecutors subjected the witness to hypnosis.  During the several hour session, the witness was allowed to see several large color photographs of plaintiff and plaintiff's car.  After the hypnosis, the police arranged for an identification procedure involving a day-time reenactment at the victim's apartment.  On counsel's advice, plaintiff refused to cooperate.  The officers then dragged him through the reenactment, after which the witness identified the plaintiff as the person he saw.

3

(According to <u>Armstrong</u>, 2005 WI 119, ¶¶49-53, the witness watched as officers walked each line-up participant up to the victim's apartment, but when it was plaintiff's turn, he went limp and the officers dragged him up to the apartment and back. Plaintiff also refused to wear the same clothing or wig worn by all the other participants.) The identification was allowed into evidence at trial.

On plaintiff's direct appeal, the "irregularities" in the witness testimony were ruled harmless errors, in light of the physical evidence presented at trial. Analysts from the Wisconsin State Crime Lab testified that plaintiff was the probable source of semen and multiple head hairs recovered from the crime scene and the victim's clothing. An analyst also testified that human blood had been found on every one of plaintiff's fingers and toenails.

During the prosecution of plaintiff's collateral attack, the physical evidence offered at trial was subjected to more than 100 DNA tests. Each test excluded plaintiff as the source of the physical evidence. When one of plaintiff's experts retested the fingernail swabs and microscope slides from the original exam, he found no evidence of blood or any evidence of foreign substances of any kind.

At trial, plaintiff relied on an alibi that he had left the victim's apartment before the time of the murder. After leaving the apartment, plaintiff received a parking ticket on his car that indicated the car's precise location around the time of the murder. Plaintiff's counsel searched city records, but found no record of the parking ticket. At trial, plaintiff testified about where he parked his car that night. The prosecution rebutted his testimony

4

by producing the parking ticket for the first time and arguing that it showed plaintiff was not "parked where he swore under oath that he did." This was a misrepresentation, because it showed that the car was parked 2 or 3 parking spaces over from where plaintiff had testified.

Plaintiff alleges one final instance of alleged prosecutorial misconduct. While preparing for the trial in 1994, one of the trial prosecutors was contacted by another person who was a possible suspect for the crime. This person confessed to the prosecutor and the confession was corroborated by two witnesses. However, the prosecutor suppressed the confession. After the remand of plaintiff's case in 2005, during a hearing on plaintiff's motion to dismiss, the prosecutor admitted under oath that he had suppressed the confession.

### B. Prosecutorial Misconduct After Remand

After remand from the Wisconsin Supreme Court, the trial court entered a detailed order mandating protocols for access to the physical evidence. Defense counsel personally made copies of the order for prosecutors, crime lab personnel, relevant police officers and the court clerk with custody of the trial evidence. In July 2006, state prosecutors, police officers and crime lab personnel violated the court order by accessing, opening and examining the evidence repeatedly in non-sterile and unsecured conditions. They had permission from the clerk of court but had not notified defense counsel or the presiding judge. In one instance, prosecutors directed crime lab analysts to subject physical evidence from the probable murder weapon to another, less discriminatory DNA test. In the course of that test, the

5

evidence was contaminated and rendered useless.  Prosecutors and crime lab analysts later admitted under oath that prosecutors directed that the evidence be accessed and tested without notice to defense counsel or the court.


DISCUSSION

A. Federal Rule of Civil Procedure 8

Plaintiff alleges that defendant caused his wrongful conviction by (1) destroying the evidence of the victim's drug use; (2) subjecting the eyewitness to suggestive hypnosis; (3) performing an unduly suggestive lineup; (4) withholding the parking ticket; (5) reaching incorrect conclusions about the blood, hair and semen evidence and lying about finding blood under plaintiff's nails; (6) violating the court order restricting access to the evidence on remand; and (7) suppressing the confession by another suspect.

Unfortunately for plaintiff, I cannot consider the merits of his complaint at this time because his pleading does not satisfy Rule 8 of the Federal Rules of Civil Procedure.  Under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  This means that "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).

Although the complaint identifies clearly the alleged actions that plaintiff believes violated his rights, it does not identify the defendants whom plaintiff intends to sue for those

6

alleged violations.  The only named defendant is the State of Wisconsin, but the State of Wisconsin is not a suable entity under 42 U.S.C. § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58, 65-71 (1989) (states and state agencies are not "persons" who may be sued for constitutional violations under § 1983).

Plaintiff styled his caption, "State of Wisconsin, *et. al.*," and it is clear from the body of his complaint that he intends to sue various police officers, crime lab analysts and prosecutors.  However, the caption does not include any of these individuals.  "When the substance of a pro se civil rights complaint indicates the existence of claims against individual officials not specifically named in the caption of the complaint, the district court must provide the petitioner with an opportunity to amend the complaint."  Donald v. Cook County Sheriff's Dept., 95 F.3d 548, 555 (7th Cir. 1996).  The court cannot do that on its own.  Myles v. United States, 416 F.3d 551, 552-53 (7th Cir. 2005) (It is "unacceptable for a court to add litigants on its own motion. Selecting defendants is a task for the plaintiff, not the judge.").

If plaintiff desires to sue individual officers, crime lab analysts or prosecutors, he must amend his complaint to identify those individuals and the specific actions taken by each individual.  I note that plaintiff has asked the court for additional time to obtain access to his court records and determine the name of the "specific individual inter-agency defendants."  Dkt. #6, at 2.  At this point, plaintiff does not need to determine the names of the individuals.  If plaintiff does not know their names, he may refer to these individuals as John Doe 1, John Doe 2, etc.  If the court determines that plaintiff will be allowed to

proceed on his claims in his amended complaint, Magistrate Judge Stephen Crocker will explain the process for plaintiff to identify the names of any John Doe defendants and further amend the complaint to include their names.

When deciding whom to name as defendants, plaintiff should consider the following legal standards.  Under Fed. R. Civ. P. 17(b), state law determines whether a particular entity has the capacity to be sued.  Although Wisconsin municipalities may be sued, Wis. Stat. § 62.25, individual agencies and departments such as police departments may not. Best v. City of Portland, 554 F.3d 698 (7th Cir. 2009) (Indiana Police Department not suable entity under § 1983 ); Chan v. Wodnicki, 123 F.3d 1005, 1007 (7th Cir. 1997) (Chicago Police Department not suable entity).  Litigants seeking redress for wrongs committed by the police or city officials must sue either the individuals who violated their rights or the municipality that has authority over the relevant police department or municipal department.

In deciding whom to sue, plaintiff should bear in mind that a municipality may not be held liable under § 1983 simply because it employs individuals who may have violated the law; rather, a city is liable only if it had a policy or custom that caused the constitutional violation.  Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978).  Thus, to state claims for due process violations, retaliation or discrimination, plaintiff must allege facts suggesting that the City of Madison maintained a policy or custom that caused the officers to violate plaintiff's rights.

B. Motion for Appointment of Counsel

Because the court has not yet ruled that plaintiff will be permitted to proceed on his § 1983 claims, it is premature at this time to decide his motion for appointment of counsel. Even if it were not, plaintiff's current affidavit in support of the motion for appointment of counsel is deficient in one important respect.

When deciding whether to appoint counsel, the court must first find that a plaintiff has made a reasonable effort to find a lawyer on his own and has been unsuccessful or that he has been prevented from making such an effort. Jackson v. County of McLean, 953 F.2d 1070 (7th Cir. 1992). To prove that litigants have made a reasonable effort to find a lawyer on their own, the court requires a plaintiff to give the court the names and addresses of at least three lawyers that he has asked to represent him and who turned him down.

Plaintiff has averred that he sought representation from six civil firms in various states but identified only one of the firms. If plaintiff chooses to file his amended complaint, he should also file a supplemental affidavit including the names of the other firms whom he has asked to represent him and who have refused.

ORDER

IT IS ORDERED that

1.   Plaintiff Ralph Armstrong's complaint is DISMISSED for failure to plead sufficient facts to give defendants notice of his claims under Fed. R. Civ. P. 8.

2.   Plaintiff may have until October 26, 2012, to file an amended complaint

identifying the individuals or entities whom he intends to sue as named defendants in this action.  If plaintiff fails to file an amended complaint in that time, his complaint will be dismissed for failure to prosecute.

    3. Plaintiff's motion for free process, dkt. #4, is DENIED as unnecessary.

    4. Plaintiff's motion for extension of time, dkt. #6, is DENIED as premature.


    Entered this 26th day of September, 2012.

                                    BY THE COURT:
                                    /s/
                                    BARBARA B. CRABB
                                    District Judge