IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RALPH DALE ARMSTRONG,

                                           OPINION AND ORDER

               Plaintiff,

                                      12-cv-426-bbc

         v.

JOHN I. NORSETTER, former Assistant Dane
County District Attorney;
MARION G. MORGAN, Madison Police
Department Detective;  JOHN DOE #2,
Madison WI Police Officer; KAREN D.
DAILY, Wisconsin Crime Lab Analyst;
DANIEL J. CAMPBELL, Wisconsin
Crime Lab Analyst; JANE DOE #3,
Wisconsin Crime Lab Analyst; JANE
DOE #4, Dane County Clerk of
Circuit Court Assistant,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Ralph Dale Armstrong was convicted in 1981 of the murder of Charise

Kamps.  After DNA evidence exonerated him twenty years later, the Wisconsin Supreme

Court overturned his conviction and remanded the case for a new trial.  That trial never took

place because the trial court dismissed the case after finding misconduct on the part of the

prosecutors.  In 2012, plaintiff brought this civil suit for money damages against the

prosecutors, police officers and state crime lab analysts involved in the prosecution of the

case against him, contending that they had violated his right to due process.

      The case is before the court on three motions: (1) a motion by plaintiff to file a fourth

amended complaint; (2) a motion by defendant John I. Norsetter to dismiss the first claim of the second amended complaint (the operative complaint) for alleged misconduct in connection with the investigation of the crime and the institution of the case against plaintiff; and (3) a motion by defendants Norsetter, Karen D. Daily and Daniel J. Campbell for dismissal of the only other claim set out in the operative complaint, alleging misconduct in connection with the testing of a semen stain on the victim's bathrobe belt.  (Defendant Marion G. Morgan did not file a motion for dismissal of this claim (the only claim alleged against her), but she submitted a brief opposing the filing of the fourth amended complaint.)

I am denying plaintiff's motion to file a fourth amended complaint because it does not cure any of the problems identified in his third amended complaint, on which he was denied leave to proceed in an order entered on July 30, 2013.  I am denying defendant Norsetter's motion to dismiss the first claim of the operative complaint because it is not clear at this time whether he has qualified immunity for his acts and omissions at the crime scene and immediately thereafter.  However, I am granting defendant Norsetter's motion to dismiss the sixth claim of the operative complaint because, as a prosecutor, he had absolute immunity for his actions, even after he was no longer acting in that capacity.  I am denying the motion for dismissal filed by defendants Daily and Campbell.  Until the facts are more fully developed, it is not possible to say whether plaintiff can proceed against these defendants or whether they have qualified immunity for their actions or are otherwise immune from suit.

OPINION

A. <u>Background</u>

Plaintiff brought this case in 2012, contending that defendants had violated his civil rights in various ways during the investigation and prosecution of the criminal case.  In an order entered on September 26, 2012, I dismissed plaintiff's initial complaint for failure to plead sufficient facts to apprise defendants of the claims against them.  Dkt. #16.  Plaintiff filed an amended complaint, dkt. #17, naming several persons as defendants.  Again, his complaint was dismissed, this time for a variety of reasons, including failure to state a claim. Dkt. #19.

Plaintiff had more success with his second amended complaint.  Dkt. #22.  In an order entered on March 20, 2013, he was granted leave to proceed on two claims: (1) defendant John Norsetter had violated plaintiff's right to due process by losing potentially exculpatory evidence in bad faith before plaintiff's initial trial; and (2) defendants Norsetter, Karen Daily, Jane Doe #3, Marion Morgan, John Doe #2, Vicki Gilbertson and Jane Doe #4 destroyed exculpatory DNA evidence after plaintiff's case was remanded but before plaintiff was retried.  (Vicki Gilbertson has been dismissed from the case by stipulation of the parties.  The John and Jane Does have not been identified.)

Plaintiff was denied leave to proceed on a claim that defendants tampered with the eyewitness because this claim was decided against him when the state courts denied his post conviction motions and it is the law of the case.  He was also denied leave to proceed on a claim that defendants Norsetter and John Doe #1 suppressed the confession of the real

3

murderer, because Norsetter and John Doe #1 have absolute immunity for their conduct as prosecutors, even after a prosecution has ended.

Up to May 17, 2013, when Jon Loevy filed a notice of appearance on plaintiff's behalf, plaintiff had been proceeding without counsel. On July 3, 2013, Loevy moved on plaintiff's behalf for leave to file a third amended complaint. That request was denied on July 30, 2013, dkt. #63, because nothing in the complaint suggested that the court should reach a different decision about claims dismissed earlier in addressing plaintiff's previously filed complaints and because the allegations in the proposed complaint were too vague to state claims against the new defendants. Although plaintiff added the names of Madison police officers, he did not say what actions those officers had taken to violate his rights. Also, he added as proposed defendants the City of Madison and Dane County, without explaining why they might be liable to plaintiff, other than saying that they "maintained policies and practices that were the moving force driving the foregoing constitutional violations." He did not identify any of these policies or practices.

In late May 2013, defendant Norsetter moved to dismiss the first claim in the operative complaint (the second amended complaint), which concerned the destruction of evidence prior to trial), and he, Daily and Campbell moved separately to dismiss the remaining claim of the complaint, alleging the destruction of the stain on the bathrobe belt in connection with plaintiff's retrial. Plaintiff then moved for leave to file a fourth amended complaint. Dkt. #74. Defendants Morgan and Norsetter oppose the motion.

4

### B. Plaintiff's Motion to File a Fourth Amended Complaint

The fourth amended complaint is essentially a duplicate of the third amended complaint, which I dismissed.  It is unnecessary to explain why the counts set out in the fourth amended complaint are insufficient.  The reasons are set out in the orders granting leave for the filing of counts one and six of the second amended complaint, Op. & Order, dkt. #27, and denying plaintiff's motion to file a third amended complaint.  Op. & Order, dkt. #63.

### C. Defendant Norsetter's Motion to Dismiss Claim One of the Complaint

When defendant John Norsetter first became involved in the investigation of Charise Kamps's murder and the prosecution of plaintiff, he was an assistant district attorney, employed by Dane County. After January 1, 1990, he and other assistant district attorneys became employees of the state.  Brown County Attorneys Assn. v. Brown County, 169 Wis. 2d 737, 740, 487 N.W. 312, 313 (Ct. App. 1992). Represented by the county, defendant Norsetter seeks to dismiss count one of the operative complaint in which plaintiff alleges that defendant advised and directed the officers at the crime scene on all aspects of the investigation, including evidence collection and retention, and that police officers found drug paraphernalia on the victim's kitchen table and threw it into a large plastic trash bag that they later left in a common storage locker at the police department and which was later lost. Plaintiff says he never had a chance to inspect or test any of the evidence and particularly the drug paraphernalia that would have proved he had not been using cocaine with the victim on the night of her death.

5

Defendant Norsetter bases his motion to dismiss on several grounds:  (1) The claim is one of procedural due process and is barred under Parratt v. Taylor, 451 U.S. 527 (1981), and Hudson v. Palmer, 468 U.S. 517, 532-33 (1984), because his actions were random and unauthorized and plaintiff had adequate post deprivation remedies; (2) he is entitled to qualified immunity as a governmental official because his actions in 1980 did not violate clearly established law of which a reasonable person would have known; and (3) after August 12, 1980, when the state criminal proceedings had been instituted against plaintiff, defendant Norsetter had absolute immunity for any actions because he was acting as a prosecutor.

1. Parratt defense

The general rule is that federal civil rights actions cannot be maintained against government employees or officials for deprivations of property as a result of misconduct that is both random and unauthorized, so long as an adequate post deprivation remedy exists. Parratt, 451 U.S. at 543 (deprivation of state prisoner's property by state employee is not actionable if deprivation is result of random and unauthorized act and adequate post deprivation remedy is available); Hudson, 468 U.S. at 533-534 (deprivation is not actionable even if state employee acted intentionally).  In both Parratt and Hudson, the Court found that the deprivations were violations of due process.  It reexamined this finding in Parratt when it decided Daniels v. Williams, 474 U.S. 327 (1986), concluding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing loss of or injury to life, liberty, or property." Id. at 328.  It noted that until Parratt was decided, the Court had never held that

6

negligent conduct was a deprivation under the due process clause. "This history reflects the traditional and common-sense notion that the Due Process Clause . . . was 'intended to secure the individual from the arbitrary exercise of the powers of government.'" Id. at 331. See also Davidson v. Cannon, 474 U.S. 344 (1986) (due process clause not implicated by negligent failure of state prison official to protect inmate from attack by another inmate).

Contrary to defendant Norsetter's argument, however, the Court has never held that a wrongly accused or convicted person cannot bring a civil case in federal court under Brady v. Maryland, 373 U.S. 83 (1963), alleging violations of due process by state prosecutors and law enforcement officers for engaging in such improper activities as withholding exculpatory evidence, fabricating false reports, manipulating testimony or employing misleading identification procedures. These are not acts of mere negligence by individual state employees that cannot be brought in federal court under Parratt and Daniels. Neither are they barred by Hudson. These are acts attributable to the state as a whole, which has an obligation to insure fair trials. Kyles v. Whitley, 514 U.S. 419, 438 (1995). See also Whitlock v. Brueggmann, 682 F.3d 567 (7th Cir. 2012) (denying police officers' interlocutory appeal from district court's denial of their claim of immunity in suit brought under Brady, alleging framing of innocent persons for murder and failure to disclose exculpatory evidence).

2. Defendant Norsetter's entitlement to qualified immunity as a governmental official

Although defendant Norsetter was not prosecuting plaintiff at the time of his alleged misfeasance in collecting and retaining evidence and is therefore not entitled to claim the

7

absolute immunity afforded to prosecutors under <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1979), he may be entitled to qualified immunity if he can show that his evidence-collecting actions did not violate the clearly established law of which a reasonable person would have known.  He argues that he cannot be found to be liable to plaintiff for his failure to preserve evidence that was potentially exculpatory because the cases addressing the government's duty to preserve such evidence, <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988), and <u>California v. Trombetta</u>, 467 U.S. 479 (1984), had not been decided at the time of Kamps's murder.

Plaintiff's allegations are sparse, but sufficient at this stage.  He alleges that the investigating officers and Norsetter knew that the victim had been seeking to purchase cocaine the evening before her death and that plaintiff had denied being her supplier or using it with her so that they would have known that the drug paraphernalia might provide evidence of the person with whom the victim had used the cocaine.  These allegations are sufficient to suggest that Norsetter had reason to believe that the evidence might corroborate plaintiff's story.  In addition, plaintiff has alleged that Norsetter believed him guilty from the beginning and had an incentive to hide any evidence that might help plaintiff.  It has been established since well before 1980 that prosecutors and law enforcement officers have a duty to turn over evidence that is material to the defense or for which there is a substantial basis to believe it might be material; that is, it must raise a reasonable doubt that did not otherwise exist.  <u>United States v. Agurs</u>, 427 U.S. 97, 106-07, 112 (1976).  Whether the particular evidence in dispute would rise to that level of materiality is questionable but not impossible.

8

3. Absolute immunity for actions taken after Norsetter had been assigned to case

Defendant Norsetter has absolute immunity for any actions taken when he was acting as a prosecutor.  Imbler, 424 U.S. 409.  Plaintiff cannot pursue any claim against Norsetter for withholding or failing to preserve evidence after he was assigned to the case as a prosecutor, which Norsetter alleges was no later than August 12, 1980.

D. Motion of Defendants Norsetter, Daily and Campbell to Dismiss Sixth Claim of Complaint

Before addressing whether defendants Daily and Campbell can be held liable for engaging in acts in 2006 that violated plaintiff's right to due process, it is appropriate to reconsider the claim against defendant Norsetter for his alleged part in the destruction of evidence that might have been gleaned from further examination of the semen stain.  As defendant points out, I found in the March 2013 order that he could not be held liable for suppression of a confession exculpating plaintiff because he was either acting as a prosecutor during the relevant time or he had a continuing obligation to plaintiff under Brady, 373 U.S. 83 (1963), and under Giglio v. United States, 405 U.S. 150 (1972) (finding due process violation requiring new trial when one prosecutor made promise to Giglio's co-defendant that it would not prosecute him if he testified against Giglio).  In doing so, I relied on the court of appeals' holding in Fields v. Wharrie, 672 F.3d 505, 515 (7th Cir. 2012), that a prosecutor's obligations under Brady and Giglio do not expire even if he is no longer involved directly in the trial or retrial.  Thus, it did not matter whether defendant Norsetter was still a prosecutor

9

involved in plaintiff's case.  Even if he was not, he has absolute immunity for those acts and omissions that were "intimately related to the judicial phase of the criminal process."  Id. at 513.

This same analysis should have applied to defendant Norsetter's alleged destruction of the semen-stained bathrobe belt belonging to the murder victim.  Norsetter's obligation to preserve the specimen arose out of his role as prosecutor.  Therefore, he is absolutely immune from a damages action, whether he acted in bad faith in seeking additional testing, knowing that it would destroy the specimen and knowing that the stain would exculpate plaintiff, or whether he simply acted negligently in sending the belt for testing.  "Brady and Giglio violations breach a defendant's trial rights and are, thus, inherently prosecutorial in nature." Fields, 672 F.3d at 514.

As to the remaining defendants, I will deny Daily and Campbell's motion for dismissal of count six.  It remains unclear what actions they took in connection with the testing of the semen stain.  It may be that they will be entitled to dismissal under Parratt and Hudson but that determination must await further factual development of the claim.

ORDER

IT IS ORDERED that plaintiff Ralph Dale Armstrong's motion to file a fourth amended complaint is DENIED; the motion of defendants John I. Norsetter to dismiss count one of the operative complaint against him is DENIED, except with respect to acts committed after he was assigned to prosecute the case, as to which the motion is GRANTED; the motion of

defendant Norsetter to dismiss count six (the only other count of the operative complaint) as to him is GRANTED; and the motion of defendants Karen D. Daily and Daniel J. Campbell to dismiss count six of the operative complaint against them is DENIED.

Entered this 22d day of October, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

11